GREEN AND OTHERS *against* WINTER.

*June* 28th.

An *appeal*, in the first instance, stays all proceedings in this court, on the matter appealed from ; and if the defendant wishes to proceed, notwithstanding the appeal, he must apply to the Chancellor for leave ; and unless the court of errors be, at the time, actually in session, and have the cause before them, this court must exercise its discretion as to the propriety of allowing the respondent to proceed.

Where an account was ordered to be taken before a master, on the principles laid down in the decree, this court refused to allow the account to be taken, pending the appeal from that decree ; nor would it direct the appellant to deliver over deeds, &c. relative to his trust.

THE petition stated the previous proceedings in this cause from the filing of the bill to the decree, in *May* last ;

1814.

GREEN
v.
WINTER.

(Vide S. C. *ante*, p. 26.;) that an *appeal* had been entered from this decretal order, which the master, before whom the account was ordered to be taken, considered as suspending the execution of that order; that the defendant was directed to pay the costs in the several cases mentioned, and on the dismissal of the appeal, heretofore entered by the defendant, the whole of which costs, amounting to 171 dollars and 75 cents, were unpaid, and the defendant committed for a contempt for the non-payment.

The petitioner prayed that the cause might proceed, notwithstanding the last appeal; and further, that the defendant might be directed to execute a conveyance of the trust estate, mentioned in the pleadings, to *George W. Murray*, the *receiver*; and that he also deliver and assign over all the papers and documents relative to the trust estate, particularly a bond and mortgage from *William Green* to the executors of *J. M. Scott*, and another to *John Jay*, and two bonds and a mortgage to *J. Ogden* and wife, and *P. L. Hoffman*, and, also, a note and mortgage pledged to *Ephraim Hart*.

*Pendleton*, for the plaintiffs, contended, that the defendant could not be heard, until he purged himself from the contempt by paying the costs. (9 *Ves.* jun. 173. 1 *Har. Pr.* 163.) The mere entry of an appeal was not, *ipso facto*, a stay of proceedings in this court. In *England*, it was settled, that an appeal to the house of lords did not, of course, stay proceedings in the court below. It was matter of discretion in the house of lords, whether the appeal should have that effect or not. (9 *Ves.* jun. 316. *Colles' P. C.* 1.) By the sixth rule of the *court for the correction of errors*, in cases not otherwise provided for, the practice, on *appeals*, is conformable to that of the house of lords in *England*. (1 *Johns. Cas.* 507, 508.)

From some orders of this court, no appeal lies. (9 *Johns. Rep.* 443. 1 *Atk.* 295.) The appellant ought himself to make a special application to the court for a stay of pro-

ceedings, otherwise, the defendant should be allowed to go on. . As to *bills of review*, there is no stay of proceedings, unless the mischief would be irreparable, or the right would be extinguished at law. (*Mitford's Equ. Pl.* 80. *Cooper's Equ. Pl.* 90. 12 *Mod.* 343.)

1814.

GREEN
v.
WINTER.

So, at law, on a writ of error being brought, in cases out of the statute, the supreme court has a discretion in deciding whether the writ of error be a *supersedeas*. (2 *Term Rep.* 79. 3 *Term Rep.* 78, 79.)

*Harison* and *Baldwin*, contra, insisted, that the general rule was, that if a party applied for a *favour*, he must first purge the contempt, before he could obtain it. The authorities went no further. The defendant is not in that situation.

Besides, a default in paying costs is no bar to the parties being heard on a totally distinct question.

As to the effect of an appeal; the true rule is, that an appeal, *prima facie*, stays all proceedings; and the defendant, before the court of appeals is in session, must apply to the court below for leave, if he wishes to proceed in the case at large, or in some particular point. The court below must, in the first instance, exercise its judgment, when and how an appeal does stay its proceedings; and the court above, when the cause comes before them, will pronounce definitively on it. It is true, that an appeal only stays proceedings applicable to, and dependent on, the matter from which the appeal is made. If the decree should be reversed, in this case, the taking of an account, on the basis of that decree, would be useless, and, of course, be set aside.

The second part of the plaintiffs' motion affects the *lien* of the defendant, and is founded on the basis of the decree, and ought to abide the event of the appeal. The application is premature.

THE CHANCELLOR. This application brings up the question, how far an appeal to the court above suspends the proceedings in this court.

1814.

GREEN
v.
WINTER.

The rule now, in *England*, is, that an appeal does not stay proceedings. Lord *Eldon* frequently declared the rule, and he said it had been adopted in the house of lords, that an appeal did not stay proceedings in chancery, unless by special order of the house. (*Warden*, &c. *of St. Paul's* v. *Morris*, 9 *Ves.* 316. . *Gwynn* v. *Lethbridge*, 14 *Ves.* 585.) He said he considered himself as acting, in that case, under the authority of the house of lords, and that, if the rule was wrong, it was more fit for the house of lords to correct it, than that he should act against precedent.

How long this has been the established rule, in *England*, does not appear. In one of the late cases, the counsel (Mr. *Mansfield*) said, the received opinion was otherwise, until the case of *Thelluson* v. *Woodford*, in 1798; and we are led to infer, from the observation of Lord Chancellor *Apsley*, in *Pomfret* v. *Smith*, (*Wyatt's Prac. Reg.* 35, 36.,) that the practice, on appeal to the house of lords, was, that the Chancellor's jurisdiction was suspended only as to the matter appealed from.

There are difficulties in the operation of any general rule, either way. To proceed, as of course, in the cause, pending an appeal, might lead to a great deal of useless labour and expense to the parties, and sometimes to irreparable mischief; and, on the other hand, to permit the proceedings to be stayed in every case, would, as Lord *Eldon* observed, render a chancery suit the greatest nuisance; for, according to that doctrine, if a petition to stay proceedings in a cause was refused, the party would have nothing to do but to appeal from that order, and thus carry his point. There must, of necessity, exist a power and a discretion in the Chancellor, as a like power exists in a court of law, (2 *Term*, 78.,) to determine, in the first instance, upon the operation of the appeal; as, whether it be brought upon an order from which an appeal will lie, and upon what points, and to what extent, the appeal operates as a stay of proceedings. I believe the practice in this court has always been accord-

ing to the more ancient opinion in the *English* chancery, and the appeal has been considered as a stay of proceedings; this appears, also, to have been the understanding of this court, as declared in the 35th, 36th, and 37th rules of *June*, 1806. The 36th rule explicitly declares, that an appeal shall prevent the issuing of process upon the decree.

My conclusion is, that an appeal does, in the first instance, stay proceedings *on the point appealed from*, and that if the party wishes to proceed, notwithstanding the appeal, he must make application to the Chancellor for leave to proceed; and, *unless the court of errors should, at the time, be actually in session, and in possession of the cause*, it must rest in the discretion of this court to determine whether the application ought to prevail. The difference, then, between the *English* practice and ours, is, that by the former the plaintiff must apply for an order to stay the proceedings; but, here, the defendant must apply for leave to proceed.

To come to the particular merits of this application; the appeal is from the decretal order directing an account to be taken, and prescribing the rules and principles by which the master is to take it. This direction does, in fact, involve the merits of the controversy between the trustee and his *cestuy que trusts*; and I have no doubt it was an order upon which an appeal might be brought. I see no sufficient reason why the master should proceed to take an account, pending the appeal; because, it could only be taken upon the principles laid down by the court; and if those principles are not correct, the whole proceeding before the master would fall to the ground. I do not perceive any necessity, in this case, for taking such a step, *de bene esse*. The same observation will apply to the other branch of the application, which was for a rule on the defendant to execute a conveyance of the trust estate, and to deliver all the attending documents, to the receiver. Until the claims of the defendant are adjusted, he ought not to be

compelled to part with his means of indemnity, and with the *lien* which the law has given him. There is no urgent necessity for this, since the defendant is disabled from intermeddling with the estate, and a receiver is appointed and authorized to collect the rents and moneys as they arise or become due. It is advisable to let the object of this application rest, and abide the event of the appeal.

The applications for leave to proceed, and for an order on the trustee to convey, are, consequently, denied, with costs.