# The Delaware, Lackawanna and Western Railroad Company

### v.

### Henry W. Breckenridge et al.

In a suit by a railroad to compel removal of pipes laid across the road, under the soil, for transportation of oil, and to prevent laying of other pipes, a preliminary injunction restraining use of the pipes was modified by an order limiting the protection of complainant to access to the crossing, for purposes of operating its road and protecting its roadbed, final decree being deferred till determination by action at law of the title to the soil under the road.—*Held,* that application for continuation of the original injunction pending appeal from the order would not be granted, as no material injury could come from the use of the pipes before final hearing.

On decree and motion for stay pending appeal.

*Mr. George Biller* (for *Mr. J. Franklin Fort*), for the motion.

*Mr. Henry S. Harris* and *Mr. Joseph Roseberry, contra.*

Emery, V. C.

This is an application for a stay of proceedings pending appeal by complainant, from an injunction decree, and for a continuance of the *ad interim* stay which was granted *ex parte* on filing the bill, and which was discharged by the injunction decree made on the hearing. This injunction order or decree is more limited in its scope than the *ad interim* stay, and the difference between them is, as complainant claims, vital to its claim for relief made in the bill and on appeal.

The defendant pipe line company, previous to the filing of the bill, had laid two pipes for the transportation of oil under the soil of the roadway of an undergrade crossing made by complainant or its lessors in the construction of its railroad, and the pipes extended across the entire right of way on lands of the complainant. Complainant claims title to the soil under the

roadway by virtue of a deed from one Stewart, the original owner of the lands through which the railroad was built. The pipe line company claims title to the soil under the roadway, and also claims the right to lay pipes therein by virtue of deeds from Stewart's subsequent grantees and devisees. Upon filing the bill, an *ad interim* restraining order was advised by Vice-Chancellor Reed, which restrained, among other things, the use of the pipes by the defendants for the transportation of oil or any other purpose until the hearing of the order to show cause " and until the further order of the court." Upon the order to show cause coming on to be heard before me, the cause was, by consent of counsel, set down for final hearing at a future day, without any formal disposition of the order to show cause and without ordering any preliminary injunction, the *ad interim* stay order being allowed to continue meantime and as originally granted, without further order in relation thereto except a modification advised by Vice-Chancellor Reed on defendants' application. Practically, the restraining order, as modified, served the purpose of a preliminary injunction pending final hearing. It was not merely an *ad interim* stay pending the hearing of the order to show cause, but being expressly made to continue " until the further order of the court," it must, for present purposes, be treated as a preliminary injunction. In *Phillips* v. *Pullen, 18 Stew. Eq. 157*, a restraining order was held to be an injunction under the statute. On the hearing, instead of making a final decree in the cause, I advised that the cause be held pending the trial of the title to the soil under the roadway by action at law, and directed that an injunction issue in the meantime, but limited to the protection of the complainant in its access to the crossing, for the purpose of operating its road and protecting its roadbed, which access the defendants had forcibly prevented. I also advised that the original *ad interim* stay or order be discharged. The complainant has appealed from the whole injunction order advised by me on the hearing, and the application is now made under the one hundred and forty-ninth rule of the court for a continuance of the original *ad interim* stay as to the use of the pipes pending appeal, or until the next term of the court of errors and appeals. This rule provides that

"an appeal from an interlocutory decree or order shall not stay proceedings in the cause without an order of this court or of the court of appeals for that purpose first had, which order shall be granted upon such terms as the court making it may impose,"

and is substantially rule 61 of the rules promulgated in 1822 by Chancellor Williamson the elder. *4 Griff. L. R. 1331.*

So far as the present application is to be disposed of by the practice of this court under this rule up to the present time, it is clear that it must be denied. The precise point was involved in the case decided by Chancellor Runyon. *Central Railroad Co.* v. *Standard Oil Co., 6 Stew. Eq. 372 (1881).* In this case an *ex parte ad interim* stay had been granted, restraining a pipe line company, pending the hearing on a rule to show cause, from the use of the pipes laid across a bridge over the roadway of the complainant. On the hearing of the order to show cause, the preliminary injunction being denied, an appeal was taken by the complainant and an application was made for a continuance of the *ad interim* stay pending appeal. The application was denied upon grounds which were stated at length, and one of the grounds stated covered the main point involved in the present application, viz., the prevention of the use of the pipes pending appeal. It was there urged, as here, in support of the application, that the oil company had usurped the property of the complainant, and that to permit it to do so was an irreparable injury. The opinion of the late chancellor upon this contention was that it was a question whether the usurpation had in fact taken place, and that no material injury would come from the use of the pipes before final hearing. See *opinion pp. 375, 376.*

Complainant's counsel here insist, in addition, that this use of the pipes for transportation of oil would be a continuous trespass on its lands for the sake of profit, and on that account complainant would suffer an irreparable injury from such use for which no adequate remedy exists at law ; but the inadequacy of the legal remedy is at least a doubtful question, and it may be settled otherwise in the legal action. Since the argument of this cause the court of appeal, in a late English case (*Whitwham* v. *Westminster &c. Co., 2 Ch. 538 (1896)*), have extended the rule of

damages in the "way leave" cases referred to in my opinion in this cause to another class of trespasses on lands for the sake of profit, and give as damages to the owner the value of the lands for the use thereof to the trespasser. Pending final decision on this question, the stay pending appeal must therefore be denied upon the principles settled by Chancellor Runyon in the above case. Counsel for the complainant urge, however, that the recent decision of the court of errors and appeals in *Pennsylvania Railroad Co.* v. *National Docks &c. Co., 35 Atl. Rep. 433 (September, 1896),* has established a different rule and entitles the complainant to an order of this court continuing the *ad interim* or preliminary stay pending appeal. In this case it was held that by the mere act of filing the notice of appeal, the final decree rendered in the cause lost all its force pending an appeal, and that an appellant could not fall into contempt by resisting the execution of the decree pending appeal. The final decree here appealed from was an injunction decree, restraining the defendant from opposing the complainant in making a causeway or tunnel under the defendant's car-yard, and requiring the defendant to assist this construction by removing certain of its trains in the car-yard. The court was of opinion that if this decree were carried out pending appeal, it would deprive the appellate court of the ability to render anything more than a merely nominal decree on appeal in favor of the appellant. In support of the present application counsel for the complainant relies upon the express declaration in the opinion filed in the cause as to the effect of an appeal from an injunction decree. The language is as follows: "It is likewise the opinion of this court that an appeal in all cases will have that effect given to it which shall be necessary to preserve the subject to which the appellate procedure relates in such a condition as will enable this court to render an efficacious decree in the premises, and that for this purpose an injunction decree will be suspended or continued, or a previous injunction revived, by the act of filing an appeal, whenever such construction shall be necessary for the end just stated."

The complainant claims that inasmuch as the appellate pro-

D., L. & W. R. R. Co. *v.* Breckenridge.

cedure on its part relates to the transportation of oil through the pipes, which it claims to be an irreparable injury, for which no adequate remedy at law exists, and against which it seeks a decree on appeal, no efficacious decree in the premises can be rendered for it on appeal unless the *ad interim* injunction order is revived. It asks, therefore, that this court give it by order the protection to which it claims to be entitled by the appeal, and that the court revive the preliminary order or injunction pending appeal. The defendants, on the other hand, contend that the rule laid down in the above opinion does not go so far as to require in all cases the preservation of the *status quo* pending an appeal which involves the *status,* but merely requires the preservation of property, the rights in which are the subject of decree and of appeal, to the end that a decree on appeal in favor of the appellant may be made efficacious. Without deciding upon the construction of the rule laid down in the opinion, it seems to me that even if the complainant's construction be the correct one, a stay by this court to carry out this construction should not now be granted for several reasons—first, the precise point now involved is the effect of the appeal upon an injunction previously granted and which has been discharged or modified by the decree appealed from, and so far as relates to this point, I am not clear that the opinion is not *obiter,* if tested by the usual rules applicable to decisions, because this point does not seem to have been necessarily involved in the decision of the case. The decision, as I understand it, establishes the rule that an appeal from an injunction decree *ipso facto* stays proceedings upon the decree appealed from to a certain extent and for a certain purpose, and it applied this rule to the case in hand, which was that of a decree granting an injunction, and settled the effect of an appeal from such decree. But the question as to the effect of this rule, when applied to decrees discharging or modifying injunctions, seems to be a different one and to present special and different considerations, which should be made the subject of direct adjudication when the point is distinctly involved.

Under the New York practice previous to 1846, the rule was established by the courts that an appeal acted, *ipso facto,* as a stay

upon the points appealed from, and that an order to proceed was necessary, yet the courts held that this rule did not have the effect of reviving an injunction discharged by the decree appealed from.

In *Hoyt* v. *Gelston, 13 Johns. 139 (1816)*, a preliminary injunction stayed a suit at law. It was dissolved on motion, and an appeal entered at once from this order dissolving. The party originally enjoined proceeded with the suit at law, and on motion to set aside the verdict, on the ground that the appeal continued the stay, the supreme court says (at *p. 140*) : " To give such an effect to an appeal from an order dissolving an injunction, would be very mischievous in practice and serve as a great engine of delay. We must consider the case as if no injunction had ever issued."

In *Wood* v. *Dwight, 7 Johns. Ch. 295 (1823)*, an injunction which enjoined an execution at law was dissolved by order, and, on appeal from the order, an application was made by defendant for leave to proceed with his action. It was held that the appeal did not, *ipso facto*, revive the injunction, and Chancellor Kent says : " It is impossible that a process that is duly discharged and *functus officio* can be revived by the mere act of the party. How could this court undertake to enforce the process and punish contempts of it in the very face of the order dissolving it? When a process is once discharged and dead, it is gone forever, and it can never be revived but by a new exercise of judicial power. It is sufficient to declare that the defendant is entitled to pursue his remedy at law equally as if no injunction had issued. No special leave to proceed is requisite."

In *Doughty* v. *Somerville &c. Railroad Co., 3 Halst. Ch. 633*, relied on in the opinion in the *National Docks Case*, the appeal was from an order dissolving an injunction, and Chief-Justice Green, delivering the opinion of the court, cites the above New York cases apparently as authorities upon the point now considered, and seems to agree with them, that even where, by virtue of the practice of the courts, the appeal is of itself a stay of proceedings, on appeal from a decree refusing an injunction, the

appeal will not, *ipso facto,* have the effect of continuing the injunction which has been dissolved.

On the other hand, Mr. Justice Randolph, in delivering the opinion of the minority of the court in *Doughty* v. *Somerville &c. Railroad Co., supra* (at *p. 632*), is of the opinion that on an appeal from an order dissolving an injunction where there is a rule for stay of proceedings, this has the effect of reviving or modifying the injunction until the appeal can be heard, and that until the hearing on appeal the case stands as though the order had not been made. As was said by Chancellor Kent in *Green* v. *Winter, 1 Johns. Ch. 77,* in reference to rules relating to stays pending appeal, there are difficulties in the operation of any general rule either way, and in view of what seems to me a fair doubt whether the decision in the *National Docks Case* should be taken to cover the point now involved, the order for stay now applied for should not be made. If this view as to the scope of the decision is erroneous, and the rule as declared applies to this case, still the order for stay should not be granted, because, in the second place, if the complainant's construction be right, the appeal itself, under the decision, is effective to give the appellant all the protection to which he is entitled pending appeal, and this protection cannot be affected by the refusal of this court to stay. And, on the other hand, a stay in this cause to the extent claimed by complainant, exceeds, as I have above shown, the limits which this court has usually fixed, and complainant should, therefore, be left to the protection of the appeal alone. In the third place, the stay should not be ordered, even if the complainant's construction of the opinion in the *National Docks Case* be correct, for another reason which seems to me important as affecting the whole question of the stay of proceedings pending appeal from injunction decrees. The appellate jurisdiction on appeal, as has been well settled (*Barton* v. *Long, 18 Stew. Eq. 160; Phillips* v. *Pullen, supra*), begins with the filing of the notice of appeal in the court of chancery. From this time the appellate court has cognizance of the appeal with the power (subject to legitimate statutory control) to regulate the entire appellate procedure, including the regulation of the stay

of proceedings in this court, during the pendency of appeal.    It is, in matter of practice, important, if not essential, that if the court of chancery has the right, in the first instance, to make an order granting or refusing a stay, this order should not be itself subject to an appeal, as indicated by Chief-Justice Green in *Doughty* v. *Somerville &c. Railroad Co., 3 Halst. Ch. 633,* and Lord Eldon in *Huguenin* v. *Baseley, 15 Ves. 179, 182.*    No difficulty from such appeals from stay orders has heretofore arisen, perhaps for the reason that the rules of the court of chancery regulating stays on appeal, being the only formal regulations of any kind upon the subject made by either the appellate or subordinate court, have been hitherto considered as providing for a complete system of procedure relating to stays on appeal, pending application to the appellate court itself.    As to stays on interlocutory decrees which are not injunction decrees, the opinion of the court of errors and appeals in *Barton* v. *Long, supra,* expressly confirms the rules as continued in force by its assent. In this case the right of the chancellor to proceed with the cause pending an appeal from such decree was challenged, and the *status* of the rules in reference to such decrees was considered, and on these subjects the following language was used in the opinion of the court :

" The power of the chancellor to proceed to a final decree during the pendency of an appeal from an interlocutory decree was challenged on the argument.    That such right exists, however, is plain.    The rules of chancery provide for and regulate such procedure, and those rules and the practice under them have been tacitly recognized and assented to from a very remote period by this court.    It would seem that it would be competent for this court to put this procedure under its own regulation, but this has not been done, and this court has acquiesced in the methods established by the chancellor, and which, while they are permitted to remain in force, must be deemed unobjectionable.    But it is clear that the party who proceeds with the cause in the court of chancery before the decision of the appeal from the interlocutory order will incur the hazard necessarily incident to such a step, for if the interlocutory order be reversed and the

error thus rectified· shall .have deprived the appellant of a right which would have benefited him on the final hearing, it is obvious that the final decree, under such circumstances, could not stand." This case differs from the *National Docks Case*, it will be perceived, in that ·the proceeding pending appeal did not, in the opinion of the court, deprive the court· of the power to render an efficacious decree on appeal.

But, since the decision in the *National Docks Case*, it would seem to be clear that, as to interlocutory injunction decrees, the rules cannot be considered as adopted by the appellate· court, and that a stay of an injunction decree pending appeal by the chancellor, under the rules of the court of chancery, can no longer be considered an order from which there is no appeal, for the reason that, in these cases, the appellate court declines to recognize the rules as existing regulations in a course of appellate procedure. The rules, therefore, and orders granted under them, on such decrees, would seem to have the same *status* as any other orders of the court of chancery, and to be appealable under the same limitations as other orders. Until, therefore, regulations relating to procedure in the original cause pending appeal are made, either by statute or by the appellate court, and the limit of the right of the court of chancery, if there be any such right, to act on them, as well as the effect of its order, is defined, it seems to me that an appeal would lie from an order granting or refusing a stay on injunction decrees which would stay that action. *Green* v. *Winter, 1 Johns. Ch. 77, 80.* This practice would introduce such an element of confusion in the whole practice relating to injunctions, that the court which may deal with that writ in the first instance, pending the regulation of the subject of stays, either by statute or the appellate court, should not grant any orders or stays pending appeal unless they are absolutely necessary for the preservation of property pending appeal, or the prevention of irreparable injury by a change of the *status quo,* and unless, in addition, there is or may be, in any particular case, a fair question whether the mere filing of· the appeal does, under the rule laid down in the *National Docks Case,* secure this protection. In the interest of justice,

.the question of protection should not, in such cases, be subject to doubt, and whether the order of the subordinate court, in such case, would be effective if appealed from, must be left for the final adjudication of the appellate court. No such case exists here, and, for the reasons stated, the application is therefore denied, but without costs.