JAMES B. DUKE

*v.*

LILLIAN N. DUKE.

[Argued and decided January 2d, 1906.]

1. To a petition for divorce the defendant filed a plea of want of jurisdiction, both of the subject-matter and of the person of the defendant, which plea, after a hearing on the merits, was overruled and the defendant ordered to answer.—*Held*, that if defendant desired to incorporate in her answer a cross-bill against the complainant, she need not therein allege any jurisdictional facts.

2. A defendant in a divorce suit who, by the order overruling her plea to the jurisdiction, has been directed to answer within thirty days or suffer a decree *pro confesso*, with a provision that the filing of the answer

shall not be taken as a waiver of her right to appeal from the order, having taken an appeal, will not by answering be considered to have appeared generally, and so to have waived her appeal.

3. Circumstances which will induce the court to stay proceedings pending appeal considered.

On motion on behalf of defendant to stay proceedings pending appeal.

*Mr. Chauncey G. Parker* and *Mr. Samuel Kalisch,* for the motion.

*Mr. Richard V. Lindabury* and *Mr. W. W. Fuller* (of the New York bar), *contra.*

PITNEY, V. C.

This is a motion on behalf of the defendant to stay proceedings pending an appeal from an interlocutory decree.

The order appealed from was one overruling a plea to the jurisdiction of the court, which was heard on the merits upon evidence adduced in open court.

The order overruling it directed the defendant to answer within thirty days or suffer a decree *pro confesso.*

A special clause, however, was added, by my directions, in these words: "The filing of said answer shall not be taken as a waiver of the right of the defendant to appeal from this order, or as a bar thereto."

The general rule of practice of this court, which has not been disturbed by any statute, is that an appeal from an interlocutory order does not stay proceedings unless this court shall hold that they should be stayed for reasons applicable to the particular case.

Many reasons can be imagined, in special cases, why this court should say, "Let us stay proceedings until we hear what the court of appeals has to say."

But, I repeat, the unvarying practice of this court is to proceed on the idea that its orders and decrees are final and binding, precisely as if there were no appeal.

If counsel will consider they will perceive that it is quite

impracticable to conduct the business of the court on any other basis.

It is overlooked oftentimes because it is so easy to appeal, but it ought not to be overlooked.

Now, I am asked to exercise the discretion of this court to stay proceedings pending this appeal on, as I understand the arguments which have been addressed to me, three grounds.

*First.* Counsel insist that the decree which I advised on the 21st ult., was based upon such a doubtful set of facts that I ought not to subject the parties to the expense of a litigation on the actual merits of the case until the opinion of the court of errors and appeals has been taken on the subject.

Now, if I felt that the result at which I arrived is a matter of serious doubt as to its accuracy, and, further, that it would be a hardship for the parties to be compelled to litigate the actual merits of the case on which the petitioner has put himself in his petition, I might feel disposed, if there were not other serious considerations leading to an opposite conclusion, to grant the motion.

But in fact I do not feel the least doubt about the correctness of my ruling the other day.

Moreover, I do not think that there is any hardship in compelling the parties to proceed.

The petitioner, in exercising his rights in that behalf, proceeds at his risk.

If he shall succeed and show that the defendant is guilty of the serious marital offences with which he charges her, and she subsequently succeeds, either in our own court of errors and appeals or in the supreme court of the United States, in showing that this court was without jurisdiction—or, what is the same thing, power—to proceed against her, any decree that this court may have rendered in the meantime against her will at once become null and void, and it will be the duty, and, I may add, the pleasure, of this court to so declare by its decree annulling the former decree.

If, on the other hand, the petitioner shall fail to make good his charges, and the defendant shall be acquitted and declared

innocent thereof, then I feel quite sure that she will have no cause to complain.

With regard to the expense of the litigation, I remarked the other day, in disposing of the plea on its merits, that there could be no difficulty on that score.

If the defendant is in the least degree impecunious, her counsel are well aware of her remedy in that respect.

But there is another consideration of great importance in determining this matter.

In the present unfortunate condition of business in our court of errors and appeals, there is little hope of this appeal being reached and determined within a year, and, if determined adversely to the defendant, her plea is so framed, and intentionally so framed, that she will be entitled to an appeal to the supreme court of the United States, if that court will take cognizance of an appeal from an interlocutory order of this nature before final decree, where another two or three years at least will elapse before it will be reached and disposed of.

I think it would be over-sanguine to expect it could be finally disposed of within five years.

And the same reasons which the counsel now urge for a stay pending an appeal to our court of errors and appeals will be equally potent for a stay pending the appeal to the supreme court of the United States.

Now, all that delay might possibly be incurred without serious prejudice to the parties if the subject-matter of the litigation were of a nature which would not be seriously injured during the appeal, and if the evidence in support of the right of the party appealed against were of such a nature—say of record or of documents—as to be absolutely protected against danger of loss.

But such is not the present case. Notoriously, the evidence of matrimonial offences rest in the memory of witnesses who are liable to die or wander beyond the reach of the process of the court, and whose memories fade, and who, after a lapse of years, when put upon the stand as witnesses, answer the questions put to them with a *non mi recordo*.

This consideration alone is, in my judgment, of very great

weight against the exercise of the discretion asked by the defendant.

Moreover, the subject-matter of this suit is the marriage relation. The evidence adduced before me on the hearing of the plea was of such a nature as to render it impossible to suppose that the petitioner was not and is not acting in good faith in prosecuting his suit. Now, pending this suit the petitioner is, of course, debarred from the privilege of entering into the marriage state, so that the case resembles somewhat the exclusion of a life tenant from the enjoyment of his estate, with no remedy for such exclusion.

Every consideration, then, that I can conceive ought to influence the court in a case of this kind, is against granting that delay.

The *second* matter urged by the defendant is that she has in mind the putting forth of a counter-claim against the petitioner.

The answer to that argument is that she is at liberty, quite irrespective of the present proceedings, to sue her husband for relief on any claim which she may have, and it is not necessary that it should take the shape of a cross-bill to his petition herein.

She may bring an independent suit, either in New York or New Jersey, as she shall choose and be advised, for it abundantly appears that petitioner is amenable to process in either state, and she may in that suit entirely ignore the existence of the present suit.

If, however, it be the object and desire of the defendant not to destroy, but to preserve, the marriage relation, and to use the charge which she suggests that she has good ground to make against the petitioner only and strictly as a defence to the present action for the purpose of enforcing the equitable doctrine of *in pari delicto,* I am still unable to see how she is prejudiced or embarrassed in setting up such defence any more than she will be prejudiced or embarrassed in answering by way of traverse.

It was suggested that it would be necessary for her, in order to file a cross-bill by way of defence, to allege therein the statutory grounds of jurisdiction, namely, the residence of the petitioner (defendant in her cross-bill) in this state, and thereby

admit the jurisdiction of this court in this cause. But I do not so understand the practice. Subject to her appeal, she is now, against her protest, within the jurisdiction of the court, and is entitled to make any defence which the law of the land and the practice of the court allows to her, and the defence of guilt on the part of the petitioner is one of those defences, and, as it seems to me, it is a good defence if simply set up in her answer without resorting to the machinery of a cross-bill, which seems to me to be necessary only in case she asks for affirmative relief against the petitioner, and that relief she can only get in case she proves in the end to be herself innocent.

But in any aspect of the case her cross-bill, incorporated, as by the practice it may be, in her answer, requires no allegation of jurisdictional facts because, as before remarked, the court has already entertained that jurisdiction, and it would be entirely inadmissible for the court to entertain a motion to strike out the pleading for want of that allegation.

*Third.* But the matter mainly relied upon by the defendant is this—that, under a decision of our court of errors and appeals, if she shall now answer the petition, she will thereby be deemed to have appeared generally to the action, and will thereby lose the benefit of the appeal, notwithstanding the special clause added to the order above referred to.

Counsel for the petitioner claims that her right to prosecute her appeal, notwithstanding her answer, was perfectly safe without that special clause. That may be, and its insertion at my suggestion may have been quite unnecessary.

Be that as it may, I am unable to conceive that her answer under the specific direction of the court, accompanied, as it is, with a direct threat of a decree *pro confesso* against her if she fails, can possibly be held to be a waiver or abandonment of her appeal, or a bar to its prosecution, or a general appearance in the cause.

Counsel argued that the moment she answered the petition a motion would be made against her to dismiss her appeal, and that the court will dismiss it, in strict pursuance of the doctrine of a case which they cite.

I cannot so believe.

The case relied upon is *Polhemus* v. *Holland Trust Co., 59 N. J. Eq. (14 Dick.) 93,* and, on appeal, *61 N. J. Eq. (16 Dick.) 654.*

There the complainant proceeded against the Holland Trust Company by service upon an agent, in this state, as I understand the report, though it may be that the service was extraterritorial.

Reading from *p. 98 of 14 Dickinson,* I find that the learned vice-chancellor uses this language: "In the second place a plea to the jurisdiction of this court to take cognizance of the subject-matter of the suit was filed to the bill, and the ground of such plea was that the defendant was a foreign corporation, not amenable to service of process in this state.

"The plea was overruled, upon the single ground that if the person who it was alleged in the bill sold the bonds in this state at the time made the false representations set out in the bill was the agent of the trust company to sell such bonds, then the cause of action arose here, and this fact conferred jurisdiction upon this court in this state.

"The court refused to try the question of agency under the issue raised by the plea because it involved directly the whole merits of the controversy, and because the facts stated in the plea, being such as defeated the suit, could be pleaded as such, and therefore was not a fit ground for a plea to the jurisdiction of the court. *National Condensed Milk Co.* v. *Brandenburgh, 40 N. J. Law (11 Vr.) 112.*

"The plea being stricken out, the objection to jurisdiction was reserved in the answer."

No appeal was at any time taken from the order striking out the plea.

An answer was filed and the cause tried on its merits and the bill dismissed.

An appeal was taken by the complainant, but none by the defendant, and came on for hearing, and the result is reported in *61 N. J. Eq. (16 Dick.) 654,* and the decree of the chancellor was reversed on the merits.

The counsel for the defendant and appellee attempted to raise the question of jurisdiction of the person of the defendant

trust company, by virtue of a clause inserted in its answer, setting up want of jurisdiction substantially as pleaded in the plea which was overruled.

The court of errors and appeals held that this could not be done under the well-settled practice of this court, and that the defendant should have appealed from the order overruling his plea, and, not having done so, its answer must be considered as a voluntary appearance and an abandonment of its plea.

This is the language used by the court of errors and appeals on that subject: "If the plea was wrongly overruled the remedy was by appeal; if rightly overruled, the answer still stood. The defendant did not appeal, but voluntarily submitted to a trial on the merits under its answer and a general replication. It could not, on final hearing, object to the jurisdiction to which it had submitted."

The essence of that decision is that the appearance by answer was voluntary. But in my judgment it is quite plain that it would not have been voluntary if the defendant had appealed from the order overruling its plea. Instead of doing that it acquiesced in the accuracy of the court in overruling its plea, and it was that acquiescence which was fatal to the defendant's objection.

The court of errors and appeals did not decide that if the defendant, before answering, had appealed from the order overruling its plea, the court would have refused to hear its appeal and would have refused to give the defendant the benefit of any error found therein, which is the question here.

The case is an illustration of what I said before about the presumption that all orders made by this court are absolutely just and right until reversed upon appeal, and it cannot be presumed or averred that any of them are wrong until they are reversed upon appeal.

Now, in the present case, the defendant has appealed from the order overruling her plea, and thereby she protests against its accuracy and justice.

If, notwithstanding that appeal and protest, she shall, under threat of a decree against her, answer the petition, I think it

would be quite absurd to hold that she voluntarily appears to the action and loses the benefit of her appeal.

She has in fact done all that she can to object to the jurisdiction of the court, and any further proceedings that she takes ought not to be treated as voluntary, but as compulsory.

That was the view taken by the supreme court of the United States in *Harkness* v. *Hyde, 98 U. S. 476.* There a party who had been subjected to extraterritorial service appeared specially for the purpose of setting aside the process as improperly served, and his motion in that behalf was overruled. He then answered and went to trial on the merits. The supreme court of the United States held that such answer was not a waiver of the lack of jurisdiction. I read from *p. 479:* "The right of the defendant to insist upon the objection to the illegality of the service was not waived by the special appearance of counsel for him to move the dismissal of the action on that ground, or, what we consider as intended, that the service be set aside; nor, when that motion was overruled, by their answering for him to the merits of the action. Illegality in a proceeding by which jurisdiction is to be obtained is in no case waived by the appearance of the defendant for the purpose of calling the attention of the court to such irregularity; nor is the objection waived when being urged it is overruled, and the defendant is thereby compelled to answer. He is not considered as abandoning his objection because he does not submit to further proceedings without contestation. It is only where he pleads to the merits in the first instance, without insisting upon the illegality, that the objection is deemed to be waived."

The record shows that the defendant in this cause did, in the first place, move to set aside the service in this case because made out of the jurisdiction, and the motion was overruled, with leave to file a plea to the jurisdiction. I suppose that practice was adopted in order to enable the defendant to have the case put in shape to give her a right of appeal to the supreme court of the United States.

It is further to be observed that in the supreme court of the United States there is neither writ of error nor appeal until final judgment or decree.

· For these reasons I am entirely satisfied that the defendant is in no danger of losing the benefit of her appeal by answering the petition, and I shall therefore decline to grant a stay.

This motion for a stay was renewed to the court of errors and appeals on Friday, January 5th, 1906, and was refused.